IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SMARTSKY NETWORKS, LLC,                    )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )    C.A. No. 22-266 (JLH)
                                           )
GOGO BUSINESS AVIATION, LLC,               )
and GOGO INC.,                             )
                                           )
            Defendants.                    )

**SMARTSKY'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO SEVER, OR
IN THE ALTERNATIVE, BIFURCATE, DEFENDANTS' PATENT
INFRINGEMENT COUNTERCLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiff SmartSky Networks, LLC*

OF COUNSEL:

Lance A. Lawson
G. Wade Leach
BURR & FORMAN LLP
101 South Tryon Street, Suite 2610
Charlotte, NC 28280
(704) 347-1170

Ryan M. Corbett
BURR & FORMAN LLP
201 North Franklin Street, Suite 3200
Tampa, FL 33602
(813) 221-2626

Charles S. Kinley
BURR & FORMAN LLP
104 South Main Street, Suite 700
Greenville, SC 29601
(864) 271-4940

March 22, 2024

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT…………………1

II.     NATURE AND STAGE OF THE PROCEEDINGS……………………………..2

III.    STATEMENT OF FACTS……………………………………………………..3

IV.     ARGUMENT………………………………………………………………...5

    A. Severance Is Appropriate Because Gogo's Infringement Counterclaims Are Separate and Distinct from SmartSky's Infringement Claims……….……………6

    B. Severance Is Necessary to Avoid Unduly Complicating this Already Complex Case, and to Reduce the Risk of Jury Confusion and Burden……………………7

    C. SmartSky Will Be Unduly Prejudiced If Gogo's Counterclaims Are Not Severed………………………………………………………………………....9

V.      IN THE ALTERNATIVE, THE COURT HAS DISCRETION TO BIFURCATE GOGO'S INFRINGEMENT COUNTERCLAIMS…………….........................15

VI.     CONCLUSION………………………………………………………………..16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*,
  No. 99-cv-2932, 2000 WL 1521600 (E.D. Pa. Oct. 6, 2000) ……….…………...……...5

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
  No. 15-205-RGA (D. Del. July 19, 2012)……………………….……………......10

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
  896 F. Supp. 505 (D. Md. 1995)……………………………………………………11

*Enzo Life Scis., Inc. v. Digene Corp.*,
  No. 02-212-JJF, 2003 WL 21402512 (D. Del June 10, 2003)……………….……….15

*Eurand Inc. v. Mylan Pharm. Inc.*,
  No. 08-cv-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009)……………………...12

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
  50 F.R.D. 112 (S.D.N.Y. 1970)………………………………………………......11

*Grigsby v. Kane*,
  250 F. Supp. 2d 453 (M.D. Pa. 2003)……………………………………………..5

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986)…………………………………………….........6, 15

*Karlo v. Pittsburgh Glass Works, LLC*,
  No. 2:10-cv-1283, 2015 WL 6134052 (W.D. Pa. Oct. 16, 2015)………………………5-6

*Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*,
  No. 07-cv-613, 2008 WL 4559703 (W.D. Wis. Jan. 24, 2008)…………………………10

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
  No. 12-cv-1063, D.I. 91 (D. Del. July 22, 2015)…………………………………9, 11, 13

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  742 F. Supp 2d 492 (D. Del. 2010)……………………………………………15

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
  143 F.R.D. 553 (D. Del. 1992)…………………….……………………………...6, 10, 13

*Senju Pharm. Co. v. Apotex Inc.*,
  891 F. Supp. 2d 656 (D. Del. 2012), *aff'd*, 746 F.3d 1344 (Fed. Cir. 2014)……………...6

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
 No. 16-284-LPS (D. Del. Aug. 17, 2017)……………………………………...……………9

*Sonos Inc. v. D&M Holdings, Inc.*,
 No. 14-cv-1330, D.I. 100, (D. Del. Mar. 7, 2016)……………………..……………...10

*Walsh v. Miehle-Goss-Dexter, Inc.*,
 378 F.2d 409 (3d Cir. 1967)……………………………………………….…………5

## Statutes

35 U.S.C. § 101………………………………………...…………………………………12

35 U.S.C. § 102……………………………………………………………………...12

35 U.S.C. § 103………………………………………………………………………12

35 U.S.C. § 112……………………………………………………………………...12

35 U.S.C. § 287………………………………………………………………………12

## Rules

Fed. R. Civ. P. 1……………………………………………………………………...7

Fed. R. Civ. P. 13………………………………………………………………………6

Fed. R. Civ. P. 21………………………………………………………………………5

Fed. R. Civ. P. 42………………………………………………………………...15

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Over two years after SmartSky initiated this patent infringement suit to stop the harm that Gogo's infringing activities are causing to SmartSky, Gogo, Inc. and Gogo Business Aviation, LLC (collectively, "Gogo") have asserted for the first time new counterclaims alleging that SmartSky infringes three Gogo patents.  Prior to filing its patent infringement counterclaims on March 5, 2024, Gogo had only asserted counterclaims seeking declarations of non-infringement and invalidity of *SmartSky's* asserted patents.  The patents Gogo asserts issued nearly thirteen and six years ago (2011 and 2018). Gogo was not diligent and waited to assert these new counterclaims until more than two years after SmartSky filed its Complaint, nine months after the Court's deadline for amending pleadings, only hours before the Court's *Markman* hearing, and only seven weeks before the close of fact discovery.

Gogo's new patent infringement counterclaims are unrelated to SmartSky's original claims and will necessarily involve different factual and legal issues regarding at least infringement, invalidity, and unenforceability of three different Gogo patents; a new round of *Markman* briefing and another *Markman* hearing; different inventors; different accused products; different witnesses; and different evidence. Attempting to resolve Gogo's late-in-the-game infringement counterclaims at the same time as SmartSky's original claims will, at a minimum, unduly and unfairly complicate and delay this already-complex case, present an unacceptable risk of jury confusion and burden, and will unfairly prejudice SmartSky. Accordingly, SmartSky respectfully requests that the Court sever Gogo's new infringement counterclaims into a separate action. Alternatively, SmartSky respectfully requests that the Court bifurcate Gogo's infringement counterclaims and let them proceed on a separate schedule, so as not to delay the resolution of SmartSky's patent infringement claims.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

SmartSky filed this case in February 2022, alleging infringement by Gogo, and seeking both injunctive relief and monetary damages. With its Complaint, SmartSky also filed a Motion for Preliminary Injunction on the basis that it was being irreparably harmed due to Gogo's conduct. (D.I. 6). In September 2022, SmartSky's Motion for Preliminary Injunction was denied (D.I. 114), which has been affirmed on appeal. *SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, 2024 WL 358136 (Fed. Cir. Jan. 31, 2024).

During this time, and after remand from the Federal Circuit, the instant litigation has continued. In lieu of answering the Complaint (D.I. 1) and Amended Complaint (D.I. 132), Gogo filed a partial Motion to Dismiss, the latter motion having been filed in April 2023. (D.I. 53, 135). The Court denied the Motion to Dismiss on February 2, 2024, and scheduled the *Markman* hearing for March 6, 2024. (D.I. 197[1], 198). On February 16, 2024, Gogo filed its Answer and Counterclaim, which asserted counts for declaratory judgment of non-infringement and invalidity on each of the patents-in-suit. (D.I. 201). On March 5, 2024, on the eve of the *Markman* hearing, Gogo filed an Amended Answer and Counterclaims, asserting for *the first time in over two years of litigation, and less than seven weeks from the close of fact discovery*,[2] infringement by SmartSky of three of Gogo's patents. (D.I. 211). The day after the *Markman* hearing, the Court issued its claim construction rulings and ordered the parties to file a proposed claim construction order

---

[1]    The Court denied the Motion to Dismiss without prejudice to Gogo presenting its claim construction position at the *Markman* hearing.

[2]    *See* D.I. 189. Gogo agreed and stipulated to the deadlines contained therein.

consistent with the Court's ruling.[3] The case otherwise remains set to complete fact discovery by April 26, 2024.

## III.    STATEMENT OF FACTS

SmartSky brought this action to enjoin Gogo from the sale of its "Gogo 5G" network for providing in-flight connectivity ("IFC") to business aircraft, as well as to enjoin the sale of Gogo's AVANCE L5 and LX5 systems that Gogo sells as a means to easily upgrade to the infringing Gogo 5G product. SmartSky also is seeking to recover the damages it has sustained and continues to sustain as a result of Gogo's infringing conduct. *See generally* D.I. 132. With approximately 94% of the business aviation aircraft with broadband IFC in the U.S., Gogo has enjoyed an effective monopoly while providing IFC with an outdated air-to-ground ("ATG") network. Gogo's legacy ATG network utilizes 3 MHz of licensed spectrum for exclusive use in that spectrum without interference from others. As demand for IFC grew, Gogo's limited bandwidth became insufficient to match the skyrocketing consumer demand. (D.I. 132 at ¶ 13.) While Gogo continued to focus on expanding its capabilities while using very expensive licensed spectrum, SmartSky developed a new ATG network with technology that utilizes 60 MHz of *unlicensed* spectrum and beamforming technology.  SmartSky's groundbreaking technology allows SmartSky to achieve roughly *10 times* the average effective performance of the Gogo legacy network. (D.I. 132 at ¶ 21-23). In order to effectively utilize the unlicensed spectrum for IFC, SmartSky developed a number of innovations to avoid interference with other networks using the unlicensed spectrum. (D.I. 142 at ¶ 21-23.).

---

[3]    A true and correct copy of the Transcript of the Court's March 7, 2024 Markman/claim construction ruling is attached hereto as Exhibit A.

Among the technologies developed by SmartSky are the patents at issue in this matter, including U.S. Patent No. 9,312,947 ("the '947 Patent"), U.S. Patent No. 11,233,417 ("the '417 Patent"), and U.S. Patent No. 11,558,108 ("the '108 Patent"), which describe and claim phased array beamforming antennas and software-defined radios that generate steerable beams, which increases range as compared to an omnidirectional signal and allow for seamless handoffs of communication links between beams originating from different ATG base stations as an aircraft moves. (D.I. 132 at ¶¶ 37-45, 56-59). Additionally, U.S. Patent No. 10,257,717 ("the '717 Patent"), U.S. Patent No. 11,533,639 ("the '639 Patent"), and U.S. Patent No. 9,730,077 ("the '077 Patent") are at issue in this case, and they generally describe and claim a ground antenna system that generates respective radiation patterns that are oriented toward the horizon, and overlap to create a "wedge" architecture. (*Id.* at ¶ 46-55). SmartSky has alleged that Gogo infringed and continues to infringe on its patented technology, including the patents-in-suit, by making, using, and offering for sale its Gogo 5G network, which includes the Gogo AVANCE L5 system and is a required component of the infringing Gogo 5G network. (*Id.* at ¶¶ 65, 82, 101, 120, 140, 155).

The three Gogo patents that were recently asserted against SmartSky in Gogo's amended counterclaims are unrelated to any of the patents that SmartSky has asserted against Gogo. There is no overlap between the inventors named on SmartSky's patents and the inventors named on Gogo's patents, and obviously no overlap in terms of ownership of the patents. (D.I. 211). Additionally, while the patents asserted in Gogo's counterclaims generally relate to air-to-ground network technology, the SmartSky patents in this case are distinct from those asserted by in Gogo's counterclaims. As will be shown in detail below, allowing Gogo's patent infringement counterclaims to proceed as a part of this litigation would be unfairly prejudicial to SmartSky. Gogo asserted the patent infringement counterclaims at the end of the stipulated period for fact

discovery and on the eve of the *Markman* hearing; litigation of these new alleged patent infringement claims would require vastly expanded fact and expert witness discovery, resulting in further delay – when SmartSky is continuing to be irreparably harmed after each and every passing day.

## IV.    ARGUMENT

Fed. R. Civ. P.  21 authorizes a court to "sever any claim against a party." It is well-settled that a motion for severance "is addressed to the sound discretion of the trial court." *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 412 (3d Cir. 1967); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (district courts enjoy "virtually unfettered discretion in determining whether or not severance is appropriate"). "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are 'discrete and separate.'" *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015). In other words, severance is appropriate where one claim is "capable of resolution despite the outcome of the other claim." *Id.*

In deciding whether to sever a claim, courts consider the same factors taken into account when deciding whether to order separate trials, namely, "convenience of the parties, avoiding prejudice, and promoting expedition and economy." *BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*, No. 99-cv-2932, 2000 WL 1521600, at *2 (E.D. Pa. Oct. 6, 2000) (identifying the following factors to be considered: whether the issues sought to be severed significantly differ from those that are to remain; whether the severable issues require different witness testimony and documentary proof than the remaining claims; and whether the grant or denial of severance will prejudice either party). A court's primary concern should be whether severance is more likely to

result in a just final disposition of the litigation as compared to keeping the claims in the same case. *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

As further explained below, Gogo's belated counterclaims for patent infringement are separate and distinct from SmartSky's claims and should be severed to avoid overly complicating this action, confusing and burdening the jury, and unduly prejudicing SmartSky.

### A. Severance Is Appropriate Because Gogo's Infringement Counterclaims Are Separate and Distinct from SmartSky's Infringement Claims.

Gogo's patent infringement counterclaims, which involve unrelated patents and different accused products than those at issue in SmartSky's claims for patent infringement, are merely permissive and not compulsory. *See* Fed. R. Civ. P. 13(a)-(b) (providing that a "compulsory" counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim [] and [] does not require adding another party over whom the court cannot acquire jurisdiction," and noting that a permissive counterclaim, unlike a compulsory counterclaim, need not be stated in the same suit); *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992). Such counterclaims are "independent claim[s], one[s] that would not be barred by the doctrine of *res judicata* in a subsequent suit." *Id.* Indeed, each patent "gives rise to an independent and distinct legal claim or cause of action." *Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 660 (D. Del. 2012), *aff'd*, 746 F.3d 1344 (Fed. Cir. 2014). Whether Gogo infringes any asserted SmartSky patent claims will have no bearing on the determination of whether SmartSky infringes any asserted Gogo patent claims, and vice versa. Thus, because SmartSky's infringement claims and Gogo's infringement counterclaims are "capable of resolution" independently of one another, severance of Gogo's counterclaims is appropriate. *Karlo*, 2015 WL 6134052, at *4.

6

**B. SmartSky Will Be Unduly Prejudiced If Gogo's Counterclaims Are Not Severed.**

The most troubling aspect to Gogo's last minute procedural tactic is that these counterclaims could have been asserted, even as a separate suit, at any point in the two prior years. But Gogo chose not to do so, instead litigating the matter before this Court, in light of SmartSky's repeated assertions that it was sustaining irreparable harm with each passing day. It should go without saying that, if required to defend against Gogo's unrelated and newly-asserted patent infringement claims, SmartSky would be severely and unfairly prejudiced.

SmartSky has been clear from the outset of this case that it needed an expedited schedule given the magnitude of the harm it has sustained as a result of Gogo's actions. It was not until *over two years* into this litigation, and *nine months after* the deadline to amend pleadings had run that Gogo asserted its patent infringement counterclaims. (D.I. 189.) Gogo's request goes far beyond tweaking the scheduling order, but would instead necessitate months, if not years, of additional litigation.

Because the present schedule did not contemplate the late addition of Gogo's patent infringement counterclaims, fitting those counterclaims into the existing scheduling order is not realistic, and the scheduling order would need to be significantly revised. Doing so at this point in time, however, would be extremely prejudicial to SmartSky as Gogo's affirmative case is many months, and perhaps years, behind the point of the schedule where the parties currently are (post-*Markman*). In a case where SmartSky has been adamant about the irreparable harm it has sustained, and is actively sustaining, extending discovery and the trial date by many months to a year or more, if not longer, is untenable. Such a result would deprive SmartSky of a meaningful opportunity to "secure the just, speedy, and inexpensive determination" of this dispute. Fed. R. Civ. P. 1.

SmartSky would also be prejudiced if it were forced to defend against Gogo's new infringement counterclaims in a compressed timeframe that does not provide adequate time for SmartSky to prepare its defenses.  After filing its counterclaims, Gogo's counsel proposed revising the current schedule to extend the currently scheduled trial data by four months to August 2025. While such a delay is prejudicial to the efficient resolution of SmartSky's claims, which will be pending for more than three years by the current trial date, forcing SmartSky to be ready for trial to defend against Gogo's infringement counterclaims just 17 months after they were filed would also unfairly prejudice SmartSky.  Indeed, SmartSky would have less than half the time to prepare its defenses against Gogo's infringement claims, as Gogo will have to defend against SmartSky's claims.

In stark contrast, Gogo cannot credibly claim to suffer similar prejudice if its counterclaims were severed, as it was the sole decision-maker as to when to assert the patent infringement counterclaims. Instead of asserting at or near the outset of the litigation, or even instead of asserting in a new, separate action, Gogo decided to assert these infringement counterclaims now, at the eve of the *Markman* hearing. Nothing in Gogo's actions or conduct suggests there is any sense of urgency requiring its infringement counterclaims to be decided on the same schedule or at the same trial as SmartSky's claims.

In addition to necessitating a schedule that would prejudice SmartSky, allowing Gogo's infringement counterclaims to proceed in the same case as SmartSky's infringement claims will present significant practical difficulties for both the parties and the Court. For example, there are limits on the number of interrogatories that can be served and the hours of deposition testimony that can be taken, page limits for critical issues such as claim construction and summary judgment, and time limits for hearings and trials. While the Court certainly has the authority to extend any or

all such limits, doing so risks making the size and scope of this case prohibitively unwieldy for the Court as well as the parties. As just one example, if Gogo's counterclaims were to remain in this case, these limits would have to be extended to account for a second and new round of claim construction briefing and a corresponding second *Markman* hearing that would draw from a universe of additional facts, claims, prior art references, prosecution history, inventorship(s), claim construction, and so on.  Gogo's decision to inject permissive counterclaims at this late stage will drag out SmartSky's patent infringement case schedule when the parties would otherwise be proceeding toward expert discovery.

Importantly, severing Gogo's patent infringement counterclaims would not preclude Gogo from asserting the same in separate litigation, leaving each party free to prosecute and defend its respective cases within the parameters permitted by the Court, and to which the parties have already agreed. Accordingly, there is no prejudice to Gogo by severing its newly-asserted counterclaims.

### C. Severance Is Necessary to Avoid Unduly Complicating this Already Complex Case, and to Reduce the Risk of Jury Confusion and Burden.

The Court has on numerous occasions found it preferable to litigate patent infringement counterclaims in a separate action, even where there was some overlap with the technology involved in the original patent claims, in order to avoid unduly complicating the case and/or confusing the jury. *See LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, C.A. No. 12-1063-LPS, D.I. 91, July 22, 2015 Hr'g Tr. at 22:3-8 (D. Del.) (granting request for severance because "it is just too easy to see how at every step of this case things will be more complicated and therefore probably proceed more slowly if I have what are effectively two cases, eight patents, four on each side, combined into one case," rather than two separate cases) (Exhibit B); *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, August 17, 2017

Hr'g Tr. at 31:9-37:6 (D. Del. Aug. 17, 2017) (severing patent infringement counterclaims where, although there was considerable overlap of technology, similar or perhaps the same products at issue in both the claims and counterclaims, and similar evidence and witnesses, the Court determined judicial economy would be best-served, and prejudice avoided, by severing and simplifying the case for the Court and the jury) (Exhibit C); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, C.A. No. 12-205-RGA, D.I. 33, July 19, 2012, Hr'g Tr. at 5:5-9, 6:11-13 (D. Del.) (treating plaintiff's patent infringement claims and defendant's patent infringement counterclaims "as two separate cases, because I'm quickly becoming convinced that you can't at the end of the day have a trial with one side saying here are my six patents and here's the other side saying here are my six patents…I have a relatively strong feeling that the confusion outweighs the efficiencies, just as a generic matter, and so in this case, too.") (Exhibit D); *Metallgesellschaft*, 143 F.R.D. at 558-59 (declining to allow patent infringement counterclaims in one action with plaintiff's patent infringement claims because doing so "would unduly complicate the intrinsically complex factual issues at bar" and "judicial economies can be accomplished without litigating all of the disputes between these parties in one action" despite "some overlapping evidence"); *cf. Sonos Inc. v. D&M Holdings, Inc.*, C.A. No. 14-1330-RGA, D.I. 100, Mar. 7, 2016 Order, ¶ 4 (D. Del.) (severing defendants' counterclaims for patent infringement for a separate trial "consistent with the Court's practice") (Exhibit E).

Other courts have taken the same approach in similar situations, finding that patent infringement counterclaims are better suited to being separately litigated in their own action, even if there is some overlap with the technology at issue in the original claims. *See Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, No. 07-cv-613, 2008 WL 4559703, at **2–3 (W.D. Wis. Jan. 24, 2008) (severing patent infringement counterclaim, which was "discrete and separate" from

original patent infringement claim despite both patents being directed to the same technology, finding the claims to be independent from one another such that both parties could be found to infringe each other's respective patents); *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506-07 (D. Md. 1995) (severing patent counterclaims from the original patent claims despite the fact that "related processes and certain common witnesses would be involved" because any "commonality as may exist among the patents is far outweighed by the potential for jury confusion"); *General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970) (severing counterclaim for patent infringement because it was "separate and distinct" from the original patent infringement claim despite a common field of concern as "the inventions, the dates of invention, the inventors, places of invention and the ownership are all different").

Of particular import and illustration in this case is *LG Electronics v. Toshiba Samsung Storage Technology Korea Corporation*. In that case, the initial complaint by LG asserting patent infringement was filed in August 2012. *See* C.A. No. 12-1063-LPS, D.I. 1. On April 2, 2015 – over two years after the original patent infringement complaint had been filed – TSST filed its answer and counterclaims asserting four patents against LG. *Id.*, D.I. 58. In the interim, there were two motions to dismiss that took over two years to resolve. *Id.*, D.I. 16, 20, 56. Although the defendant's counterclaim was technically timely, Judge Stark granted the plaintiffs' motion for severance, noting that:

> [I]t is undisputed that I have discretion to sever the counterclaims, that is, the infringement claims brought by TSST as counterclaims. They were timely permissive but not compulsory counterclaims. And exercising that discretion in the context of this case, I do hereby order severance. That is because I believe, as an exercise of my discretion, that it will be best for the overall efficient management of what will become two cases to treat them as two cases because, in my mind, they are two cases despite the overlap of the parties and the overlap at a broad general level of the technology. So I do hereby order that the what are now counterclaims

11

be severed, and should, as I assume is the case, TSST wish to proceed on those, that they do so through opening a new case. My reasons for exercising my discretion in this way include that it has taken quite some time for the LG case to get started, and I see no reason to further delay or in any way risk delaying the start of what began as the LG case on four of LG's patents. I think probably just as a matter of common sense, a case that involves eight patents is more difficult to manage and, all else being equal, will proceed more slowly than a case with four patents. Similarly, a case in which patents are being asserted by both sides as opposed to just by one side, likewise is all else being equal more complex and will proceed more slowly.

Ex. B (Tr. at 20:23-21:23).

The same issues justifying and supporting severance of the patent infringement counterclaims in the cases identified above apply here. Permitting Gogo's unduly delayed counterclaims to remain here would result in undue complication and jury confusion. Standing alone, the "complicated legal concepts and technologies at issue in patent infringement and validity disputes provide an ample source of confusion for juries." *Eurand Inc. v. Mylan Pharm. Inc.*, C.A. No. 08-889-SLR, 2009 WL 3172197, at *1 n.4 (D. Del. Oct. 1, 2009). Here, without even considering Gogo's patent infringement counterclaims, this case involves the infringement of six (6) different patents covering various aspects of SmartSky's ATG technology. In turn, Gogo has attacked the validity of SmartSky's patent claims on numerous grounds, including: prior art, inadequate written description, and indefiniteness under 35 U.S.C. §§ 101, 102, 103, and 112; and failure to mark under 35 U.S.C. § 287. (D.I. 211 at 24.) Of course, these defenses are in addition to Gogo's other defenses of non-infringement and estoppel. (*Id.* at 24-25.) To put it succinctly, this case was already complicated, before Gogo's sought to insert its own infringement claims against SmartSky.

With Gogo's delayed assertion of its permissive counterclaims, that concern only intensifies. Gogo has now, *two years* into this litigation and *nine months after* the amendment of pleadings deadline has passed, *see* (D.I. 133), asserted infringement against SmartSky for three of

12

its own patents: U.S. Patent No. 8,032,135 ("the '135 patent"), filed on March 3, 2003 and issued on October 4, 2011; U.S. Patent No. 9,954,600 ("the '600 patent"), filed on November 15, 2016 and issued on April 24, 2018; and U.S. Patent No. 9,973,262 ("the '262 patent"), filed on March 15, 2017 and issued on May 15, 2018. (D.I. 211 at 27.) Gogo is now attempting to bring into this case – more than two years after the lawsuit began – patents that were filed *over twenty years ago* and issued early in the last decade. *Id.* Of course, these patents have different inventors, different priority dates, different specifications, different prosecution histories, different prior art, and entirely different accused products than the patents-in-suit already at issue. The outcome of this late assertion necessarily requires different evidence, including entirely different inventors, different infringement and non-infringement analyses, different validity and invalidity arguments that are, or may well be, irrelevant to SmartSky's claims, different damages analyses, and presumably different expert witnesses. If permitted to proceed as Gogo has proposed, it is easy to envision the inevitable—this case will become essentially two cases, several patents (and correspondingly, claims for infringement) asserted by each side, "combined into one case." (*See* Exhibit B, *LG Elecs.*, C.A. No. 12-1063-LPS, D.I. 91, July 22, 2015 Hr'g Tr. at 22:3-8.) It is equally clear that the additional patents and their respective specifications, prosecution histories, infringement, invalidity, and damages theories would make this already complex case particularly confusing to a jury.

The risks of jury confusion and over-complication weigh heavily against keeping Gogo's infringement counterclaims in the same case. Moreover, whatever minor inefficiencies at least arguably might arise from severance can be ameliorated by, for example, agreeing to use certain documents produced in this case in the severed case, and coordinating depositions of the few witnesses that may overlap in both cases. *Metallgesellschaft*, 143 F.R.D. at 558-59 (declining to

allow patent infringement counterclaims on unrelated patents where "judicial economies can be accomplished without litigating all of the disputes between these parties in one action" despite "some overlapping evidence").

Any such overlap in discovery and evidence is in any event likely to be minimal due to the significant differences between Gogo's patents and the SmartSky patents that relate to different aspects of air-to-ground communication technology.   While SmartSky's patents relate to, for example, beam-forming, use of licensed and/or unlicensed spectrum, hard and soft handovers, and same- and cross-spectrum handovers, Gogo's newly asserted patents relate to using bandwidth distribution protocols to dynamically adjust bandwidth ('135 Patent, at claim 1), mapping data to separate forward links based on the type of data being transmitted ('262 Patent, at claim 1), and calculating forward-link user capacity matrices based on signal-to-noise ratios ('600 Patent, at claim 1). These many differences will require, at a minimum, separate claim construction inquiries, will significantly limit any potential overlap in prior art, and require new, fact-intensive, and time-consuming fact discovery. This concern is even more problematic given that SmartSky's affirmative case and Gogo's affirmative case are otherwise entirely separate, as they concern infringement of unrelated patents—including patents directed to entirely different technology—by unrelated accused products. SmartSky will therefore require different documents and witnesses to prove its affirmative liability and damages case than Gogo will need with respect to its counterclaims. Thus, other than the possibility of a handful of prior art references and a technology tutorial describing the ATG technology at a high level, any meaningful overlap in discovery or evidence between Gogo's and SmartSky's claims is unlikely.

Furthermore, notwithstanding any minor efficiencies Gogo may argue could be gained by litigating Gogo's patent infringement counterclaims as part and parcel of this litigation, doing so

14

will only exacerbate the already considerable risk of jury confusion and burden. The jury may understandably have a difficult time keeping track of which component of whose accused ATG network product is accused of performing which claimed functionality of which claimed patent, and what functionality that component actually performs. Likewise, the jury would likely have difficulty keeping track of which prior art predates whose patents and discloses which limitations.

Severing Gogo's patent infringement counterclaims is therefore the approach "most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d at 1084.

## V.  IN THE ALTERNATIVE, THE COURT HAS DISCRETION TO BIFURCATE GOGO'S INFRINGEMENT COUNTERCLAIMS.

In the alternative, the Court should exercise its discretion to bifurcate Gogo's patent infringement counterclaims. Under Rule 42(b), "to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In patent cases, district courts routinely use bifurcation to simplify the issues in patent cases, as well as to maintain the manageability of the volume and complexity of the evidence to be submitted to a jury. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 742 F. Supp. 2d 492, 496 (D. Del. 2010); *see also Enzo Life Scis., Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 WL 21402512, at *4 (D. Del. June 10, 2003) ("Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case."). "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

For the same reasons identified in Section IV, *supra* – namely, that Gogo's patent infringement counterclaims are not related to the subject matter at issue in this suit and therefore likely to cause additional jury confusion, along with the extreme prejudice SmartSky will suffer – and to the extent the Court is not comfortable severing Gogo's patent infringement counterclaims, it should bifurcate those counterclaims into a separate trial to be governed by separate scheduling order.

## VI. CONCLUSION

For the foregoing reasons, SmartSky respectfully requests that the Court sever, or in the alternative, bifurcate, Gogo's patent infringement counterclaims asserted in its Amended Answer and Counterclaims (D.I. 211).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

OF COUNSEL:

Lance A. Lawson
G. Wade Leach
BURR & FORMAN LLP
101 South Tryon Street, Suite 2610
Charlotte, NC  28280
(704) 347-1170

Ryan M. Corbett
BURR & FORMAN LLP
201 North Franklin Street, Suite 3200
Tampa, FL  33602
(813) 221-2626

Charles S. Kinley
BURR & FORMAN LLP
104 South Main Street, Suite 700
Greenville, SC 29601
(864) 271-4940

March 22, 2024

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiff SmartSky Networks, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 22, 2024, upon the following in the manner indicated:

Kelly E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Griffin A. Schoenbaum, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Jeffrey S. Gerchick, Esquire                      *VIA ELECTRONIC MAIL*
Keith H. Forst, Esquire
Brian Saunders, Esquire
QUINN, EMANUEL, URQUHART
  & SULLIVAN, LLP
1300 I Street NW
Suite 900
Washington, D.C. 20005
*Attorneys for Defendants*

Scott L. Watson, Esquire                          *VIA ELECTRONIC MAIL*
QUINN, EMANUEL, URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
*Attorneys for Defendants*

Alexander Rudis, Esquire                          *VIA ELECTRONIC MAIL*
QUINN, EMANUEL, URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
*Attorneys for Defendants*

Brett N. Watkins, Esquire
QUINN, EMANUEL, URQUHART
  & SULLIVAN, LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

*/s/ Travis J. Murray*

Travis J. Murray (#6882)