IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMARTSKY NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-266-JLH |
| | ) | |
| GOGO BUSINESS AVIATION, LLC, and GOGO INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this **7th** day of **October, 2024**, the court having considered the parties' letter submissions on the motion to compel the production of a clawed back email thread found at SSN00005127O4-708 filed by defendants Gogo Business Aviation, LLC and Gogo Inc. (collectively, "Gogo"), (D.I. 352; D.I. 353), IT IS ORDERED that Gogo's motion is GRANTED for the reasons set forth below.

1. **Background.** Plaintiff SmartSky Networks, LLC ("SmartSky") filed this patent infringement action against Gogo on February 28, 2022, and the operative complaint alleges infringement of U.S. Patent Nos. 9,312,947; 11,223,417; 10,257,717 ("the '717 patent"); 9,730,077; 11,558,108; and 11,533,639 ("the '639 patent;" collectively, the "Asserted Patents"). (D.I. 1; D.I. 132) The Asserted Patents generally relate to air-to-ground ("ATG") networks to facilitate communication between aircraft in-flight nodes and base stations on the ground. (D.I. 132 at ¶ 9) The present dispute focuses on the '717 and '639 patents, which are specifically directed to cells having a wedge-shaped architecture to facilitate continuous wireless communication at various distances and altitudes. ('717 patent, col. 1:21-24; '639 patent, col. 1:30-33)

2. On April 21, 2023, Gogo served Interrogatory No. 6 on SmartSky seeking discovery on the conception and reduction to practice of each Asserted Patent. (D.I. 144) SmartSky initially responded that the '717 and '639 patents were conceived and reduced to practice at least by March 15, 2013. (D.I. 352, Ex. 1 at 3) In a supplemental response served on March 7, 2024, SmartSky indicated that the '717 and '639 patents were conceived at least by February 20, 2013, when inventor Douglas Hyslop submitted an invention disclosure to SmartSky's in-house patent counsel Chad Thorson. (*Id.*, Ex. 1 at 5) SmartSky maintained that the '717 and '639 patents were reduced to practice at least by March 15, 2013, which is the date the original application in the '717 and '639 patent family was filed. (*Id.*; D.I. 319 at 42)

3. SmartSky did not identify by Bates number the invention disclosure described in the supplemental response. In April of 2024, however, SmartSky produced over 40,000 documents, including an email chain from February 20, 2013 bearing Bates numbers SSN0000512704-708. (D.I. 352, Ex. 2) Hyslop and Thorson were among the senders and recipients of the email chain. (D.I. 354) Gogo maintains that this email chain is the invention disclosure referenced in SmartSky's supplemental interrogatory response. (D.I. 352 at 1)

4. On May 14, 2024, after reviewing the production, Gogo alerted SmartSky that the February 20, 2013 email chain included an attorney. (D.I. 352, Ex. 2) SmartSky responded that the production was inadvertent and the communication was privileged, invoking paragraph 17 of the protective order to claw back the communication. (*Id.*, Ex. 3; D.I. 47 at ¶ 17) Gogo sequestered the documents identified as privileged by SmartSky, but it indicated its intention to challenge the privilege assertion with respect to SSN0000512704-708. (*Id.*, Ex. 4 at 8-10)

5. Gogo filed its second amended answer and counterclaims on May 29, 2024, asserting an affirmative defense for inequitable conduct based on the contention that the

applicants for the '717 and '639 patents intentionally withheld material information from the U.S. Patent and Trademark Office ("PTO"). (D.I. 319 at 25-48) Specifically, Gogo avers that Hyslop and others at SmartSky were aware of an FCC Petition for Rulemaking filed by Qualcomm Incorporated ("Qualcomm") in July of 2011 and routinely discussed the wedge architecture disclosed in the Qualcomm 2011 FCC Petition in comparison with SmartSky's own design. (*Id.*)

**6.** On June 4, 2024, Gogo challenged SmartSky's privilege claim as to SSN0000512704-708, among other documents. (D.I. 352, Ex. 4 at 8-9) SmartSky maintained its privilege assertion but offered to produce a redacted version of the email chain. (*Id.*, Ex. 4 at 4-5)

**7.** Thorson and Hyslop were deposed on June 26 and July 19, 2024, respectively. (*Id.*, Exs. 9-10) Both were asked if they recalled receiving the February 20, 2013 invention disclosure described in SmartSky's supplemental response to Interrogatory No. 6, and both responded that they did not recall the substance of that disclosure. (*Id.*, Ex. 9 at 132:21-133:11; Ex. 10 at 117:20-118:4) Thorson and Hyslop were also questioned about the Qualcomm 2011 FCC Petition, and neither recalled whether it was disclosed by or to them. (*Id.*, Ex. 9 at 134:12-15; Ex. 10 at 119:2-121:6) Neither Thorson nor Hyslop declined to answer these lines of questioning based on an assertion of the attorney-client privilege.

**8. Legal standard.** "The attorney-client privilege protects communications between a client and an attorney related to the purpose of securing legal advice." *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 195 F. Supp. 3d 639, 642 (D. Del. 2016) (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)). The party asserting the privilege bears the burden of demonstrating its applicability. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012).

To satisfy this burden, the party asserting the privilege must demonstrate that the withheld material is "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client." *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011).

**9. Analysis.** The two issues before the court are: (1) whether the February 20, 2013 email chain is privileged, and (2) if so, whether SmartSky waived the privilege.

**10.** *The February 20, 2013 email chain is privileged.* SmartSky has met its burden to show that the email chain is privileged. The email chain is a communication between privileged persons, including the inventor (Hyslop) and counsel (Thorson), for the purpose of obtaining legal advice. (D.I. 354) This is sufficient to satisfy the elements of a privilege assertion. *See In re Chevron Corp.*, 650 F.3d at 289. SmartSky does not directly address why other invention disclosures attached to the same email chain were produced with no privilege assertion, but Gogo acknowledges that this issue goes to waiver, as opposed to the existence of privilege.[1] (D.I. 352 at 2; Exs. 6-8) ("[E]ven if the threat may have originally been privileged, SmartSky's weaponization of the attorney-client privilege is actually a waiver[.]"). Nonetheless, SmartSky's inconsistent assertion of privilege over some, but not all, invention disclosures made in the February 20, 2013 email chain further supports the court's waiver analysis, *infra*. *See Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS, 2017 WL 3264068, at *1-2 (D. Del. Aug. 1,

---

[1] SmartSky explains that an error in its e-discovery vendor's software caused a large volume of privileged materials to be produced. (D.I. 353 at 3) SmartSky also acknowledges that its "counsel also engaged in a quality control review of the privilege coding of its vendor, as a second level review to identify privileged material." (*Id.*) SmartSky does not explain why counsel's review failed to detect the privileged material and instead reverts to discussion of its reasonable reliance on its vendor. (*Id.*)

4

2017) (finding that the plaintiff put privileged communications at issue by inconsistently asserting privilege and selectively relying on privileged documents).

**11. *SmartSky waived the privilege over the February 20, 2013 email chain.*** Gogo argues that SmartSky waived the privilege over the email chain because it is the only evidence supporting SmartSky's assertion that February 20, 2013 is the conception date for the '717 and '639 patents. (D.I. 352 at 2-3; Ex. 1 at 5)  According to Gogo, SmartSky's disclosure of the February 20, 2013 conception date in its supplemental response to Interrogatory No. 6 put the email chain "at issue" in the litigation. (*Id.*)  The "at issue" doctrine applies when a party "puts at issue the *actual contents* of an attorney-client communication in support of its claim or defense." *Sensormatic Elecs., LLC v. Genentec (USA) Inc.*, C.A. No. 20-760-GBW, 2022 WL 14760185, at *2 (D. Del. Oct. 20, 2022) (citing *Rhone-Poulenc*, 32 F.3d at 863)).

**12.** SmartSky does not refute Gogo's assertion that the clawed-back email chain is the only document in the record supporting a February 20, 2013 conception date for the asserted claims in the '717 and '639 patents. (D.I. 353; D.I. 352, Ex. 1 at 5; D.I. 354)  The actual contents of the email chain are at issue to establish what was allegedly conceived on February 20, 2013. *See Acantha LLC v. DePuy Orthopaedics Inc.*, 2017 WL 5186376, at *5-6 (E.D. Wis. Nov. 8, 2017) ("[B]y using certain portions of its attorney-client communications as evidence of its conception and diligence, it has placed its communications with its patent attorneys at issue.").  Without this document, Gogo has no means to question the foundational support for SmartSky's conception date.

**13.** SmartSky argues that "technical information in the Protected Materials does not render the communication discoverable or destroy its privilege." (D.I. 353 at 2)  But SmartSky fails to address the fact that two other invention disclosures attached to the same email chain

5

were produced without a privilege assertion.[2] (D.I. 352, Exs. 6-8) SmartSky should not be permitted to use a February 20, 2013 conception date as a sword while shielding the communication substantiating that conception as privileged. Therefore, Gogo's motion to compel is GRANTED, limited to the production of the February 20, 2013 email chain at SSN0000512704-708.

**14.** Having determined that the privilege was waived as to the February 20, 2013 email chain, the court need not decide whether the deposition testimony of Hyslop and Thorson amounts to an independent waiver of privilege. Regardless of whether the deposition testimony rose to the level of a privilege waiver, the circumstances surrounding the testimony support a conclusion that SmartSky's assertion of the privilege has been uneven at best. *See Image Corp.*, 2017 WL 3264068, at *2. SmartSky does not dispute the fact that counsel did not instruct Hyslop or Thorson not to answer questions about the February 20, 2013 invention disclosure, even though SmartSky had clawed back the email chain prior to the depositions.

**15. Conclusion.** For the foregoing reasons, IT IS ORDERED that Gogo's motion to compel the production of SSN0000512704-708 is GRANTED. Compliance shall be held in abeyance pending resolution of objections, if any, to this Memorandum Order. IT IS FURTHER ORDERED that the discovery dispute teleconference set in this matter for October 8, 2024 at 3:00 p.m. is CANCELLED.

**16.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the

---

[2] SmartSky's use of the clawback assertion as both a sword and a shield is further illustrated by its clawback and assertion of privilege over Bates No. SSN0000512707 but not the identical Bates No. SSN0000512091. (*Compare* D.I. 352, Ex. 6 *with* D.I. 354) SmartSky did not address this inconsistency in its responsive letter submission even though Gogo attached Bates No. SSN0000512091 as an exhibit to its opening letter submission.

unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **October 15, 2024,** for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**17.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**18.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge